WILLIAM STRONG, ADMINISTRATOR OF THE ESTATE OF AMORY HOLBROOK, DECEASED, RESPONDENT, *v.* WILLIAM H. BARNHART, IMPLEADED WITH OTHERS, APPELLANT.

JUDGMENTS OF TERRITORIAL COURTS.—By the act of June 4, 1859, regulating "the practice of the Supreme and Circuit Courts," the judgments of the District Courts of the late Territory of Oregon were transferred to the State courts for the proper counties, to be thereafter enforced as judgments of such courts, and the subsequent repeal of that act did not affect the fransfer.

STATUTE OF LIMITATIONS.—The provisions of the statute of this State, limiting the period within which an action may be brought on a judgment, do not apply to a proceeding under § 292 of the Civil Code for the enforcement of a dormant domestic judgment. The case of *Murch* v. *Moore* (2 Or. 189), cited and approved.

DORMANT JUDGMENT—How ENFORCED.—After the expiration of five years from the rendition of a judgment, it can only be enforced by obtaining leave to issue an execution, as provided by § 292 of the Code.

APPEAL from Multnomah County.

On the 28th day of July, 1875, the plaintiff, who is the respondent here, filed his motion in the court below, under § 292 of the Civil Code, for leave to issue execution for the sum of $25,376.40, upon a judgment recovered by Amory Holbrook, now deceased, against William H. Barnhart and others, in the District Court of the Territory of Oregon for the County of Multnomah, on the 3d day of March, 1856. William H. Barnhart, who was the only defendant served, interposed a demurrer to the motion on the ground: 1st, that the court had no jurisdiction of the subject-matter of the motion; 2d, that the motion did not state facts sufficient to constitute a cause for relief; and 3d, that the plaintiff had not moved within the time limited by the Code, to wit, within ten years from the rendition of the judgment. The court overruled the demurrer, and made an order allowing the motion of the plaintiff, from which ruling and order the defendant appealed to this Court.

*W. W. Thayer and William Strong,* for Respondent.

*Simpson and Waldo,* for Appellant.

By the Court, BURNETT, J.:

The first question presented by this appeal is, whether the Circuit Court for Multnomah County had jurisdiction over this cause. It is contended by counsel for the appellant, that, as it appears that the judgment in question was rendered in the District Court of the Territory of Oregon, it was in a different jurisdiction, and that the Circuit Court of the State has no authority or control over it whatever.

When the territorial government ceased to exist, the State government became its legal successor, and the Circuit Courts of the State the successors of the District Courts of the territory; and certainly the organization of a State government could not take from the people the rights accruing to them as citizens thereof under the former territorial government, nor make their exercise depend upon the action of Congress after the State government was formed and the State admitted into the Union.

When the State was ".received into the Union on an equal footing with the other States in all respects whatever," she was a sovereign in all matters pertaining to the administration of her domestic affairs; and instead of the act of 1859 of the first legislature that met under the Constitution being (as was claimed by counsel for appellant) "a rape upon the territorial courts," or "an effort to deflower them," it was simply disposing of the effects of one who was dead, and ready for sepulture; the territorial government having been deposed by those who had originally caused it to exist: a greater power than Congress—the *people*—in whom the elements of sovereignty were born.

The Constitution of the State provides, Art. 8, § 9, that "all judicial power, authority and jurisdiction not vested by this Constitution, or by laws consistent therewith, exclusively in some other court, shall belong to the Circuit Courts, and they shall have appellate jurisdiction and supervisory control over the County Courts, and all other inferior courts, officers and tribunals." And § 10, Art. 18, is as follows:

"All property and rights of the Territory and of the sev-

eral counties, subdivisions and political bodies corporate of or in the Territory, including fines, penalties, forfeitures, debts and claims of whatsoever nature, and recognizances, obligations and undertakings to or for the use of the Territory, or any county, political corporation, office, or otherwise to or for the public, shall inure to the State, or remain to the county, local division, corporation, officer or public, as if the change of government had not been made, and private rights shall not be affected by such change."

In pursuance of this authority, and to carry into effect the provisions of the Constitution, the Legislature, at its first session under the State government, passed the act of 1859, heretofore referred to, § 3 of which reads as follows:

"All books, records, journals, causes, proceedings, matters, files and papers being or pending in, or returnable to the Supreme Court of the Territory of Oregon, are hereby transferred to, and shall be kept, perfected, executed, heard, and disposed of by the Supreme Court of the State of Oregon, and the books, records, journals, causes, proceedings, files, matters and papers being or pending in, or returnable to the District Courts of the Territory of Oregon, *are hereby transferred*, and shall be kept, perfected, executed, heard, and disposed of by the Circuit Courts of the State of Oregon."

It is, however, contended by appellant's counsel that this act of 1859 was repealed by the general repealing act, which took effect June 1, 1873, and that this proceeding should have been instituted during the time the law of 1859 was in force. The law of 1859 certainly had the effect to transfer the records and papers of the District Courts of the Territory into the Circuit Courts of the State. The language of the act of 1859, "hereby are transferred to," certainly is as strong as it could well be. If, then, the Circuit Court for Multnomah County obtained possession and control of this judgment by the act of 1859, we must look to some other statute for authority to enforce it, and this we find in the Act passed October 11, 1862, providing for enforcing judgments by execution, which continues substantially the law as it stood in 1854, during the territorial

existence, with the addition of the sections providing for the reviving dormant judgments. The last-mentioned act is the one under which the proceeding was commenced, and we think embraces this judgment, for the reason that it was a record of the Circuit Court for Multnomah County on the 1st day of June, 1863, expressly made so by an act of the Legislature, and that court had as complete jurisdiction over it as it would have had over one rendered since that time.

The next question presented is that of the statute of limitations. It is claimed by the appellant's counsel that this proceeding falls within either § 5 or § 11 of the statute of limitations. Those sections are as follows: Section 5 provides that "an action upon a judgment or decree of any court of the United States or of any State or Territory within the United States, shall be commenced within ten years after the cause of action accrues."

Section 11 provides that "an action for any cause not hereinbefore provided for, shall be commenced within ten years after the cause of action shall have accrued."

This Court gave a construction to § 5, above quoted, in *Murch* v. *Moore* (2 Or. 189), holding that a domestic judgment is not within that provision, and we are unable to see that there is any error in that conclusion. Counsel for appellant calls our attention to the case of *Mason* v. *Cronise* (20 Cal. 211), holding a different view, but we are not convinced that it is correct. In fact, we think much the better reason is in favor of the decision in *Murch* v. *Moore.* Suppose we were to apply this section to domestic judgments, at what time does the "cause of action accrue?" It must be as soon as the judgment is entered; and if a person obtaining a judgment can sue it over once, there is no limit to the number of actions that may be maintained on each succeeding judgment. The effect of giving this construction to the statute is a strong argument against it. The means provided by the statute for enforcing a judgment is by execution, which may be issued at any time within five years of the rendition of the judgment, after which time it can only be enforced by obtaining leave to

issue an execution as provided in § 292 of the code. To hold that an action can be maintained on a domestic judgment would be inconsistent with the whole theory of our statute, which entirely excludes the idea of any such a proceeding, and in fact the action of debt upon judgment had fallen into disuse at common law and was discontinued by the courts at the time Blackstone wrote. (2 Blackstone's Com. 160.)

If it were true that § 5 of the statute of limitations, in the absence of any other statute on the subject, would embrace domestic judgments, still when there is a subsequent statute providing that execution may issue at any time after five years, upon leave being obtained, without any limitation as to time, we cannot see how the general statute on that subject could control.

There is no error in the decision of the court below overruling the demurrer.