## TERESA EDDY *v.* E. L. COLDWELL.

[S. C. 31 Pac. Rep. 475.]

1. EXECUTION — DORMANT JUDGMENT.— Under section 295, Hill's Code, which
   provides that "whenever after the entry of a judgment, a period of five
   years shall elapse without an execution being issued on such judgment,
   thereafter an execution shall not issue, except on motion asking leave,
   on which motion summons must issue as in actions at law, an execu-
   tion issued after five years without such motion or leave is not absolutely
   void but only voidable.

2. IDEM.— The remedy provided by section 295, Hill's Code, is intended only
   as a substitute for the writ of *scire facias* to revive a dormant judgment;
   it was not intended to affect the jurisdiction of the court or the validity
   of the judgment in case an execution should be issued without the pro-
   ceedings provided by that section.

Multnomah County: E. D. SHATTUCK, Judge.

Plaintiff appeals.    Affirmed.

*John H. Mitchell, W. W. Thayer,* and *Edward B. Watson,* for Appellants.

*W. R. Willis,* and *Guy G. Willis,* for Respondent.

This is an action at law to recover the possession of certain real property described in the complaint. The pleadings are in the usual form, and present the issue sought to be tried in such actions. The parties waived a trial by a jury and consented to try the issue before the court. After trial the court found and filed its conclusions of fact and law, which are set out in the record.

For the purposes of this case it is enough to state that on the twenty sixth day of November, 1872, E. F. Russell became the owner of the tract of land in dispute through mesne conveyance duly executed and purporting to convey it; that on the fifth day of October, 1874, judgment was duly rendered and docketed in the county court for the county of Multnomah in favor of Lathrop Coldwell and against E. F. Russell; that on the twenty-eighth day April, 1879, an execution was issued on said judgment, and returned unsatisfied on the twenty-fourth day of June, 1879; that no other execution was issued on said judgment until the thirty-first day of July, 1884, a period of over five years and three months after the issuing of said execution on the twenty-eighth day of April, 1879; that on the thirty-first day of July, 1884, without any leave of court, an alias execution was issued on said judgment, and on the twentieth day of September, 1884, the tract of land in controversy was sold by the sheriff under said alias execution to James E. Coldwell for $967.71 bid by him and by him paid to the sheriff; that on the sixth day of October, the sale was duly confirmed by order of the county court, and in pursuance thereof, on the twelfth day of December, 1884, the sheriff executed a deed to James E. Coldwell; that on the third day of February, 1885, James E. Coldwell executed a deed of the same property, being the property in dispute, to E. L. Coldwell, the defendant herein; that on the

thirtieth day of January, 1890, E. F. Russell and Carrie, his wife, executed a deed of the property in dispute to Jackson Jordan, and that on the fifth day of August, 1891, Jackson Jordan executed a deed of the same property to Teresa Eddy, the plaintiff herein. Upon this state of facts the court found, as conclusions of law, that the plaintiff was not entitled to the possession of the property described in the complaint; that the defendant is the owner in fee simple of said property and entitled to the possession of the same, etc., and thereupon rendered a judgment in favor of the defendant, from which judgment the plaintiff has brought this appeal.

From these facts it appears that an execution was issued upon the judgment before a period of five years had elapsed after its entry, but that a period of over five years and three months intervened between the dates of issuing the first and second executions, without any proceeding to obtain leave to issue the latter, under which the sale of the property in dispute was made. As counsel for the plaintiff assert, the main question presented is, whether this second execution—obtained without leave—is valid, and the sheriff's sale and deed under it effectual to pass the title to the land in controversy. Their contention is, that an execution issued without reviving the judgment, as provided by section 295, Hill's Code, where more than five years have elapsed since the issuance of the last execution, is void, and consequently insufficient to support the sale of land made thereunder. This contention is based on the assumption that the proceeding by motion to obtain leave to issue execution under section 295, *supra*, is, in substance and effect, essentially a different remedy than was afforded by the writ of *scire facias* at common law; that it is a separate proceeding, distinctly judicial, requiring notice to the judgment debtor, pleadings, trial, and judgment; and that the proceeding being such, the requirements of the section to obtain leave to issue an execution, and to give notice to the judgment debtor, is mandatory and not merely

directory, rendering an execution issued without such leave and notice a nullity, and the sale thereunder void.

LORD, C. J. (after stating the facts).—At common law no execution could be issued upon a judgment after the expiration of a year and a day, unless an execution had been taken out and returned during that time. When this had not been done within that period, the judgment became inoperative or, as it is usually called, dormant, and so continued until it was revived by a writ of *scire facias.* This is a writ founded upon the judgment, the object of which is to obtain authority to have an execution issued thereon; and ordering the defendant to show cause, if any there be, why such execution should not issue. The writ presents the plaintiff's whole case, and constitutes the declaration to which the defendant must plead. It serves the double purpose of a writ and declaration, and as its object is to revive a dormant judgment, and not create one anew, it is not an original process but a judicial writ. While *scire facias* is not an original process by which an action is commenced, it is considered to be so far original that the defendant may plead to it : *Winder* v. *Caldwell,* 14 How. 434. Lord Coke said that a *scire facias* is to be " accounted in law in the nature of an action," because the defendant could plead to it, and so the books have often said since; but the facts it recites assert no cause of action beyond or back of the judgment upon which it is based : Co. Lit. 2906 ; *Fenner* v. *Evans,* 1 Term, 268 ; *Bilbo* v. *Allen,* 4 Heisk, 31. A *scire facias* cannot therefore be regarded as a new or an original action, when the plaintiff is not required to file any new declaration or rule the defendant to plead, and when no new judgment is rendered on it, but it is merely a continuation of the old one. Referring to the fact that *scire facias* is sometimes spoken of as a new action, Mr. Freeman has well observed that " the object sought and the result accomplished by a *scire facias* to revive a judgment, both show that it is not a new action, but merely a continuation of the old one; no cause of action beyond

the old judgment can be asserted; no ground of defense anterior to the old judgment can be brought forward; no relief beyond that embraced in the old judgment can be obtained; and finally, the judgment entered upon the *scire facias* is simply "that the plaintiff have execution for the judgment in the said *scire facias* and costs," and whatever destroys the effect of the original judgment also destroys the effect of its revival by *scire facias*": 2 Freeman, § 442. Hence the only defenses to a *scire. facias* were either *nul tiel record,* or payment, or accord and satisfaction, or some other matter which showed that the judgment had been discharged: It may also be noted that by the form of the writ the intent is to give notice to the defendant to show cause, if any there be, why execution shall not issue; yet in practice the cases show that the issuance of execution or revival of the judgment without such notice, is not fatal to its validity. Where the judgment is revived by *scire facias* without any actual notice, the defendant may afterwards present his defense by *audita querela,* or upon motion to be relieved, if the revivor of the judgment was improper: Freem. Ex. § 89. But this goes to show that a judgment revived by *scire facias* in such case, although without actual notice, is not void but voidable. The consequences are the same as the issuance of an execution after a year and a day without a *scire facias*— the writ is voidable but not void. The defendant may take proceedings to have it set aside, but if he neglected to do so, others cannot do it for him, nor can he attack it collaterally, and a levy and sale under it are sufficient to transfer title: Freem. Ex. § 29.

Turning now to section 295, we are to inquire whether its provisions were intended as a substitute for the writ of *scire facias* to revive a dormant judgment only aiming to accomplish the result sought by it; or to provide an essentially different remedy, which, in substance and effect, is a new action, and the result to be obtained by it, a new judgment, and which is to be pursued exclusively, rendering any execution issued five years after

its entry without any proceeding to obtain leave upon notice duly given to the party to be affected by it, fatal to its validity, and all proceedings under it void and ineffectual to pass title. Section 295 provides: "Whenever, after the entry of a judgment, a period of five years shall elapse without an execution being issued on such judgment, thereafter an execution shall not issue except as in this section provided." Then follow six subdivisions of said section, prescribing and regulating the mode of procedure to obtain leave of the court to issue execution. Subdivision 1 provides that the party in whose favor judgment is given shall file a motion with the clerk where the judgment is entered for leave to issue an execution, and that the motion shall state the names of the parties to the judgment, the date of its entry, and the amount claimed to be due thereon, and that the motion shall be subscribed and verified as a complaint. Subdivision 2 provides that at any time after filing such motion, the party may cause a summons to be served on the judgment debtor in like manner and with like effect as in an action at law; and that in case such judgment debtor be dead, the summons may be served upon his representatives by publication, as in case of a non-resident, or by actual service of the summons. Subdivision 3 provides that the summons shall be substantially the same as in an action at law; but instead of the notice therein required, it shall state the amount claimed, or the property sought to be recovered, in the manner prescribed by subdivision 1 of the section. Subdivision 4 provides that "the judgment debtor, or in case of his death, his representative, may file an answer to such motion within the time allowed to answer a complaint in an action at law, alleging any defense to such motion which may exist. If no answer be filed within the time prescribed, the motion shall be allowed of course. The moving party may demur or reply to the answer. The party opposed to the motion may demur to the same or to the reply. The pleadings

shall be subscribed and verified, and the proceedings con-
ducted as in actions at law." Subdivision 5 provides what
the word "representative" shall be deemed to include.
Subdivision 6 provides that "the order shall specify the
amount for which execution is to issue, or the particular
property the possession of which is to be delivered; it
shall be entered in the journal and docketed as a judg-
ment, and the roll thereafter prepared and filed as a final
record of the proceedings, as the case may be, in the
same manner as a judgment."

It will be observed that the mode of procedure by
motion to revive a dormant judgment is adopted, so far
as applicable, as in actions at law. It prescribes the
mode to be pursued to obtain leave of the court to issue
execution and secure the fruit of the dormant judgment,
and if the result sought to be accomplished by the motion
is the same as was obtained by *scire facias*, the mode does
not affect the substance, and the motion was intended as
a substitute for it. A glance at the subdivisions already
set out will be sufficient to show that the motion, like the
writ of *scire facias*, is a proceeding designed to make the
parties interested show cause, if any there be, why an
execution shall not issue, or the dormant judgment shall
not be revived. There is no substantial difference between
them, and the fact that this result can be as readily ob-
tained by a motion and order as by a writ of *scire facias*
fixes their identity, and indicates that the former was
intended as a substitute for the latter. As Mr. Freeman
says: "Practically, a writ of *scire facias* is nothing be-
yond a notice to the parties in interest that the applicant
will, at a stated time, apply for a writ of execution, which
notice is accompanied by a statement of the grounds upon
which the application will be based." But he adds: "A
notice prepared and signed by the plaintiff or his attor-
ney, and served by a copy on the defendants in the suit,
if living, or on their representatives, if dead, would
accomplish every useful purpose accomplished by the
writ; while the order of the court, made after hearing the

motion specified in the notice, would afford relief as adequate as could be granted by a judgment on *scire facias*": Freem. Ex. § 95. The whole purpose in either case is to recover the amount or the property established by the old judgment, and not to recover a judgment based on a new cause of action. Neither in one nor the other could any ground of defense or relief be obtained beyond that embraced in the old judgment; nor could any other defense be set up than *nul tiel record*, payment or matters going to show that the judgment was discharged. So that for all practical purposes the object of both were the same, and the motion and order only takes the place and serves the purpose sought to be accomplished by *scire facias*. In *Strong* v. *Barnhart*, 6 Or. 102, in referring to the proceeding under the statute by motion, BOISE, J., said: "This is a proceeding in the nature of a *scire facias*, which is a judicial writ to obtain execution on a judgment, and the same defenses only can be pleaded in this proceeding that were pleaded to a *scire facias*"; thus recognizing that the proceeding by motion was the same in nature, allowing no different defenses, and designed to perform the same office and obtain the same result. Nor is there anything in *Pursel* v *Deal*, 16 Or. 299 (18 Pac. Rep. 401), to the contrary. It is true than STRAHAN, J., spoke of the proceeding by motion under the statute as a "cause of action," but by that was only meant that a party in whose favor a judgment had been given had the right to institute proceedings by motion to obtain an order to issue execution upon a dormant judgment.

It is insisted, however, that section 295 prohibits the issuing of an execution in any other mode, or upon any other conditions than those prescribed; that negative words are employed which render the section mandatory. The section provides: * * * "An execution shall *not* issue *except* as in this section provided. 1. The party in whose favor a judgment is given shall file a motion with the clerk of the court where the judgment is entered for leave to file an execution. * * * 2. At any time after

filing such motion the party may cause a summons to be served on the judgment debtor in like manner and with like effect as in actions at law." Prior to the enactment of the present statute, our statute upon this subject was like the New York statute, from which it was taken, and provided that "an execution can be issued only by leave of the court upon motion, with personal notice to the adverse party." In all substantial particulars these provisions of the statutes are the same, and intended to afford the same relief. The present statute points out where the motion shall be filed, what it shall contain, and the summons to be served. The prior statute points out that it shall be upon motion, which necessarily would contain in substance what our present statute directs, and which was formerly recited in the writ of *scire facias,* and with personal notice to the adverse party, which is in effect nothing more than is accomplished by the service of the summons. All that can be said is, that the proceeding under the present statute is better and more definite, but the purpose is identical, and no new or different remedy is substituted. The intention is to provide the same protection to the judgment debtor as was provided at common law by *scire facias,* or as was provided by the former statute. In view of the considerations suggested, and the purpose to be served by proceedings to obtain authority to issue execution upon a dormant judgment, there is no substantial difference between the words of the present statute, "shall not issue except," and the former statute, "can be issued only." What is the difference between saying that an execution can be issued only by leave of the court on motion, and an execution shall not issue except the party file a motion, etc.? The inference is just as strong in one case as in the other, that the execution cannot issue "except," or only on the conditions prescribed. One is as mandatory as the other. The bare words in either case, considered apart from the nature of the proceeding and the purpose it is designed to serve, might well be

construed as mandatory, rendering proceedings in disregard of the statute a nullity.

Looking at the previous state of the law, it is plain that under either the former or present statute, the intention was to prescribe a mode of proceeding which was to be pursued in such case, but not to affect the jurisdiction in case there was an omission to follow the mode of procedure as prescribed. At common law, if an execution was not taken within a year and a day, it could not be regularly issued thereafter without reviving the judgment by *scire facias;* yet it was invariably held that an execution taken out after that time, and without *scire facias* or judgment of revivor, was not void but only irregular. The defendant might interpose and set it aside upon motion, but if he neglected to do so, it was considered an implied admission that the judgment was still in full force. The application of this principle finds its illustration in *Mariner* v. *Coon,* 16 Wis. *468, where the question presented was, whether an execution issued upon a dormant judgment without leave of court is void or only voidable; but where it was insisted, as here, that the statute, in providing that "an execution can be issued only by leave of the court, upon motion," rendered void any execution not issued except in the mode prescribed, the court says: "But the Code (sections 192 and 193 of the original act, now sections 1 and 2 of chapter 134, revised statutes) prescribes a different practice, and it is upon this that the counsel for the defendant chiefly relies. When the execution in controversy was issued, the period was fixed at two years from the entry of judgment. It is now enlarged to five. After that period has elapsed, it is provided that 'an execution can be issued only by leave of the court upon motion,' etc. This language is said to take away all power, except it be acquired in the manner prescribed, and to render every process issued in contravention of it void for want of jurisdiction. Were we to suppose the legislature to be speaking with reference to the question

of power, then there is nothing in their language incon-
sistent with the position of counsel, and we might adopt
his views.    Upon looking to the previous state of the
law and to other provisions of the act, we see very clearly
that it was a matter of practice with which the legisla-
ture was dealing; a question as to the form of proceed-
ing which should thenceforth be pursued, and not one
which necessarily affected the jurisdiction in case the
new practice was not complied with.    By section 33 of
the original act, the writ of *scire facias* is virtually abol-
ished.    The remedies hereafter obtainable in that form
may be obtained by civil action under the provisions of
the Code.    But by the particular provision of section 2,
chapter 134, above referred to, the remedy by motion to
revive a judgment which has become dormant by the
lapse of time is substituted.    Hence the peculiar signifi-
cance of the word 'only,' upon which the counsel insists
so strongly to show a want of jurisdiction.    The execu-
tion shall be issued *only* upon a motion, otherwise the
plaintiff might resort to the remedy by civil action.    It
appears, therefore, that the consequences of a departure
from the practice prescribed by statute are the same as
they were at common law."

  This view is supported in *Bank of Genesee* v. *Spencer,*
18 N. Y. 154, where the language of the statute was that
"an execution can be issued only by leave of the court,
upon motion with personal notice," etc., the court saying:
"There was always a time after which the party who had
recovered judgment was not at liberty to sue out execu-
tion without an application to the court.    Formerly the
time was a year and a day; and the form of obtaining an
award of execution when one had not been issued in time,
was by *scire facias quare executionem non.*    Afterwards it
was extended by the Revised Statutes to two years.    By
the Code it was further extended, as we have seen, to five
years, and the mode of obtaining leave was an application
to the court on motion.    Under the former practice, it was
well settled that the execution, if issued too late, was not

void: *Woodcock* v. *Bennett,* 1 Cow. 711 (13 Am. Dec. 568).
It was liable to be set aside on motion; but such motion,
like all others, must be made promptly; and if it ap-
peared that the defendant had consented to the execution
being issued, or if there were any circumstances which
in fairness and equity precluded him from availing him-
self of the irregularity, the motion would not prevail:
*Morris* v. *Jones,* 2 Barn. & Cress. 232.    There is no reason
why the same practice should not prevail under the Code."
See also *Winebrener* v. *Johnson,* 7 Abb. Pr. N. S. 205;
*Union Bank* v. *Sargeant,* 53 Barb. 422.    The same princi-
ples of construction were applied in *Lawrence* v. *Gram-
bling,* 13 S. C. 120, upon the provision of the statute of
South Carolina providing that "an execution can be issued
only by leave of the court upon motion," etc., the court
saying:   "It is very clear that the provisions introduced
by the Code and the act of 1873 as a substitute for the
writ of *scire facias* as theretofore used, should be con-
strued as giving to the remedy provided as such substitute
the same force and effect, when not otherwise provided,
as the proceedings by *scire facias.*    There is nothing in
the provisions of the Code, as it originally stood, or as it
now stands under the amendment of 1873, that fixes the
consequences that should result from the failure of a
party to obtain leave of the court, where such leave is
necessary.    We must recur to the former practice to
ascertain whether the failure to bring a *scire facias* where
necessary, rendered the execution issued without such
proceeding absolutely void, or merely voidable on the
ground of irregularity.    This proposition was decided
in *Ingram* v. *Belk,* 2 Strob. 208 (47 Am. Dec. 591), where
it is said that in such cases the execution is merely void-
able, and not void."

While it is true there are some courts which have de-
clared executions issued without an order of the court
void, Mr. Freeman expresses the opinion that "these
decisions are in the main based on a misconception of
the rules generally applied at common law to executions

issued on dormant judgments in the absence of their revivor by *scire facias*": Freem. Ex. §§ 27, 29. And while it is also true that by section 354 of the Code the writ of *scire facias*, the writ of *quo warranto*, etc., are abolished, yet the section provides that the remedies heretofore obtainable under those forms may still be obtained by an action at law in the mode prescribed by the statute. It is only the form that is abrogated, the jurisdiction and power of the courts are not touched, nor the right to seek and reach through them all the remedy that the writ of *scire facias* once afforded: *Wilson* v. *Shively*, 10 Or. 273; *State* v. *Douglas County Road Co. id.* 199; *People* v. *Hall*, 80 N. Y. 119. There is nothing in the statute indicating that the failure of a party to obtain leave of the court renders the execution void. No such consequences are directly or indirectly declared. On the contrary, the courts hold, with rare exceptions, in construing similar statutes, that no such consequences were intended or do result; that the intention of the legislature was not to take away all power from the execution unless it had been acquired by pursuing the mode prescribed; that it was not dealing with the question of power, but providing a new mode of procedure thenceforth to be pursued as a substitute for the former practice. These considerations, in view of the previous condition of the law, indicate that the intention was to provide a form of proceeding to accomplish the same result as was obtained by *scire facias*, without affecting the jurisdiction in case an execution was issued without such proceeding. This view renders it unnecessary to consider any of the other propositions discussed by either counsel.

It results that the judgment must be affirmed.