On respondent's petition for attorney fees filed November 10, and appellant's objections to respondent's petition for attorney fees filed November 25, 2003, petition for attorney fees allowed April 14, 2004

In the Matter of the Marriage of

Douglas MARESH,
*Appellant,*

*and*

Kathy Adele MARESH,
*Respondent.*

00-3032; A119156

87 P3d 1154

Patricia D. Gaw for petition.

Barry Adamson *contra*.

Before Brewer, Presiding Judge, and Deits, Chief Judge,* and Linder, Judge.

_____

* Deits, C. J., *vice* Wollheim, J.

BREWER, P. J.

## BREWER, P. J.

Respondent seeks an award of attorney fees after prevailing in petitioner's appeal of a trial court order authorizing the sale of the parties' former marital residence.[1] ORS 107.105(5). We grant respondent's petition for attorney fees.

The parties' marriage was dissolved by a judgment entered in January 2001. The judgment awarded the marital residence to petitioner, and it awarded respondent an offsetting money judgment secured by a judgment lien against the residence. Petitioner failed to pay the full amount of the money judgment, and respondent petitioned for a sheriff's sale of the residence. *See former* ORS 23.445 (1981), *renumbered as* ORS 18.536 (2003) (providing procedure for obtaining order authorizing sale of residential property). Petitioner objected that the property was exempt from execution under ORS 23.240 (2001), *renumbered as* ORS 18.395 (2003). The trial court disagreed and ordered the sale. On appeal, we affirmed the order and awarded respondent costs. *Maresh and Maresh*, 190 Or App 228, 235, 78 P3d 157 (2003).

Respondent seeks attorney fees on appeal under ORS 107.105(5). That statute provides:

> "If an appeal is taken from the judgment or other appealable order in a suit for annulment or dissolution of a marriage or for separation, and the appellate court awards costs and disbursements to a party, it may also award to that party, as part of the costs, such additional sum of money as it may adjudge reasonable as an attorney fee on the appeal."

Petitioner argues that the statute does not authorize an award of attorney fees in the present circumstances. He contends that the phrase "judgment or other appealable order in a suit for annulment or dissolution of a marriage" limits our authority to award attorney fees to appeals from appealable prejudgment orders or the final judgment by which a marriage is annulled or dissolved.

---

[1] *Maresh and Maresh*, 190 Or App 228, 78 P3d 157 (2003). For consistency, we refer to the parties by their designations in the marital dissolution proceeding.

Petitioner's argument presents the question whether, for purposes of ORS 107.105(5), an order authorizing a sheriff's sale on execution of a judgment of dissolution is an "appealable order in a suit for annulment or dissolution of a marriage." In making that determination, we look to the text of the statute in context and, if necessary, to legislative history and other interpretive aids. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993).

We summarily dispose of the question whether the order for sale of the residence was an "appealable order." Although the legislature has not defined that term in ORS chapter 107, ORS 19.205(2)(c) (2001), *amended by* Or Laws 2003, ch 576, § 85, provided that a "final order affecting a substantial right, and made in a proceeding after judgment or decree" may be reviewed on appeal.[2] Petitioner understandably does not assert that the order authorizing the sale was not appealable. After all, it is he who appealed from it. Our decision on the merits in this appeal reflects our own determination that the order was appealable. *See Maresh*, 190 Or App at 231 (stating that "[p]etitioner appeals from that order. *See* ORS 19.205(2)(c).").

More precisely, then, the issue is whether an appealable post-judgment order for execution of a money judgment entered as part of a dissolution judgment is an appealable order "in a suit" for dissolution of marriage. ORS chapter 107 does not define "suit" or provide other explicit guidance as to the scope of proceedings that are encompassed within a suit.[3]

---

[2] We apply the 2001 version of the statute because the 2003 amendments do not apply to this case.

[3] The term "suit," like "decree," is a vestige from the era preceding the abolition of the procedural distinction between actions at law and suits in equity. *Cf. Welsh v. Case*, 180 Or App 370, 375, 43 P3d 445, *rev den*, 334 Or 632 (2002) (observing that a distinction between "law" and "equity" nonetheless persists in determining, for example, whether the right to jury trial exists in an action). The current proper descriptive terms are "action" and "judgment." As we said in *State ex rel Olson v. Renda*, 171 Or App 713, 715 n 3, 17 P3d 514 (2000):

"In 1979, ORCP 2 abolished all procedural distinctions between actions at law and suits in equity at the trial level, including the distinction between judgments and decrees. 'Judgment' is the proper term for the final determination of the rights of the parties in an action. ORCP 67 A; *Webber v. Olsen*, 330 Or 189, 190 n 1, 998 P2d 666 (2000). Although 'decree' retains no independent legal meaning, its use has persisted, especially in domestic relations practice. For the dual sakes of consistency and clarity, its decent burial is long overdue."

However, prior versions of the execution statutes and cases applying those statutes suggest that the legislature intended that judgment enforcement proceedings be considered part of the underlying action for purposes of ORS 107.105(5). The statute governing the award of attorney fees on appeal in dissolution actions was enacted in 1953. Or Laws 1953, ch 553, § 2.[4] We therefore look to the statutes in effect in that year and earlier years for interpretive guidance. The Deady Code of 1862 provided that "[t]he party in whose favor a judgment is given, which requires the payment of money, the delivery of real or personal property, or either of them, may at any time after the entry thereof have a writ of execution issued for its enforcement * * *." General Laws of Oregon, Civ Code, ch III, § 271, p 162 (Deady & Lane 1843-1872). The Deady Code did not distinguish between real and personal property. *Id.* at § 273(1), p 162. If the underlying judgment was less than five years old, no supplemental judicial proceeding was required for the writ to issue. *Id.* at § 273, pp 162-63. However, if at least five years had elapsed after the entry of judgment, the judgment creditor was required to obtain an order for execution. *Id.* at § 292, pp 168-69. The order could be entered only after the judgment debtor had an opportunity to be heard with respect to the proposed execution. *Id.* at § 292(2) - (4), pp 168-69. The Code provided that "[t]he order shall specify the amount for which execution is to issue, or the particular property, possession of which is to be delivered; it shall be entered in the journal and docketed as a judgment, and a roll thereafter prepared and filed, or a final record made of the proceedings, as the case may be in the same manner as a judgment." *Id.* at § 292(6), p 169.

Early case law construing section 292 was inconsistent as to whether judgment execution proceedings were part

The 2003 legislature enacted numerous statutory amendments that deleted usages of the word "decree" and substituted in its place the word "judgment." *See, e.g.,* Or Laws 2003, ch 576, § 109 (amending ORS 107.105(5) to make that change). However, those amendments generally did not replace the term "suit" with "action." *Id.* We encourage the legislature to make appropriate amendments to ORS 107.105 and other statutes that retain the archaic usage of "suit."

[4] The statute originally was enacted as ORS 107.100(3). In 1971, the legislature repealed ORS 107.100 and enacted ORS 107.105 in its place. Or Laws 1971, ch 280, §§ 13, 28. The current attorney fee statute is, in all material respects, identical to the original version. For convenience, we refer to the statute by its current number.

of the action in which the judgment was entered. In *Ladd v. Higley*, 5 Or 296, 298 (1874), the Supreme Court held that, because an order on execution had to be docketed as a judgment, proceedings under section 292 constituted a separate action. The following year, however, the court decided *Strong v. Barnhart*, 5 Or 496 (1875). In that case, the plaintiff sought to enforce a judgment that had been entered 19 years earlier. The defendant argued that enforcement of the judgment was barred by the applicable statute of limitations. In resolving that issue, the court explained:

> "[A]t what time does the 'cause of action accrue?' It must be as soon as the judgment is entered; and if a person obtaining a judgment can sue it over once, there is no limit to the number of actions that may be maintained on each succeeding judgment. The effect of giving this construction to the statute is a strong argument against it. The means provided by the statute for enforcing a judgment is by execution, which may be issued at any time within five years of the rendition of the judgment, after which time it can only be enforced by obtaining leave to issue an execution as provided in § 292 of the code. To hold that an action can be maintained on a domestic judgment would be inconsistent with the whole theory of our statute, which entirely excludes the idea of any such a proceeding, and in fact the action of debt upon judgment had fallen into disuse at common law and was discontinued by the courts at the time Blackstone wrote."

*Id.* at 499-500. In other words, the enforcement proceeding was part of the original action; it was not a new or separate action.

In *Pursel v. Deal*, 16 Or 295, 300, 18 P 461 (1888), the court appeared to reverse course again by referring to the plaintiff's right to execution on a judgment as a "cause of action." However, in *Eddy v. Coldwell*, 23 Or 163, 31 P 475 (1892), the court reaffirmed its decision in *Strong*. It stated:

> "It is true that [the court in *Pursel*] spoke of the proceeding by motion under the statute as a 'cause of action,' but by that was only meant that a party in whose favor a judgment had been given had the right to institute proceedings by motion to obtain an order to issue execution upon a dormant judgment."

*Eddy*, 23 Or at 170.

In 1893, the legislature repealed section 292 and, in its place, enacted the following provision:

> "If, at any time after the entry of judgment, a period of ten consecutive years shall have elapsed without an execution being issued on such judgment during such period, no execution shall thereafter issue on such judgment, and such judgment shall thereafter be conclusively presumed to be paid and satisfied unless an execution be issued thereon within one year from the passage of this act."

The Codes and Statutes of Oregon, title III, ch IV, § 241 (Bellinger & Cotton 1901). In construing that statute, the Supreme Court in effect concluded that execution proceedings were part of the action in which the judgment was entered. *See In re Barker*, 83 Or 702, 710, 164 P 382 (1917) ("[T]he clerk is required to issue the writ and direct it to the sheriff. Hence it is not a judicial function in any sense of the word, but purely ministerial at the request of a party.").

The execution statutes remained materially unchanged until 1953, when the legislature enacted ORS 107.105(5). By then, the understanding that judgment execution proceedings are part of the underlying action was well established. A contemporary legal dictionary defined "execution of judgment or decree" as "[t]he *last stage of a suit*, whereby possession is obtained of anything recovered." *Black's Law Dictionary* 678 (4th ed 1951) (emphasis added). We presume that the legislature was aware of that meaning when it enacted ORS 107.105(5). *See Gaston v. Parsons*, 318 Or 247, 253, 864 P2d 1319 (1994) (stating rule that statutory terms that have a well-defined legal meaning are to be given that meaning when construing a statute); *State v. Clevenger*, 297 Or 234, 244, 683 P2d 1360 (1984) (stating that, in enacting legislation, the legislature is presumed to be aware of the Supreme Court's decisions). In short, the historical construction of the relevant statutes indicates that judgment execution proceedings are part of the underlying action, and nothing in either ORS chapter 23 (1953) or ORS chapter 107 (1953) suggests that, by enacting ORS 107.105(5), the legislature intended to alter that construction.[5]

---

[5] Courts in other jurisdictions have come to the same conclusion regarding the procedural nature of judgment execution proceedings. *See, e.g., Faias v. Superior*

Other statutory context supports that conclusion. ORS 107.105(6), also enacted in 1953,[6] provides, in part:

> "If, as a result of a suit for the annulment or dissolution of a marriage or for separation, the parties to such suit become owners of an undivided interest in any real or personal property, or both, either party may maintain supplemental proceedings by filing a petition *in such suit* for the partition of such real or personal property, or both * * *. * * * [T]he court granting the judgment shall have in the first instance and retain jurisdiction in equity therefor."

(Emphasis added.) The emphasized text shows that the legislature contemplated that judicial proceedings that are supplemental to—that is, that *follow*—the final judgment in a dissolution action are part of "such suit." That conclusion also is consistent with this court's construction of ORCP 68 A(1), which provides that, as used in that rule, " '[a]ttorney fees' are the reasonable value of legal services related to the prosecution or defense of an action." In *Johnson v. Jeppe*, 77 Or App 685, 688, 713 P2d 1090 (1986), this court held that "[t]he enforcement of a judgment and final collection of money due are 'legal services related to the prosecution or defense of an action' and may be considered in awarding attorney fees [under ORCP 68]." *See also Marquez v. Meyers*, 96 Or App 214, 217-18, 772 P2d 437 (1989) (holding that a party is entitled to recover attorney fees under ORCP 68 for the enforcement of a judgment when the party was entitled to receive attorney fees under the original judgment).

The question remains whether *former* ORS 23.445, originally enacted in 1981, created a proceeding that lies outside the scope of ORS 107.105(5). We conclude that it did not. *Former* ORS 23.445 provided, in part:

---

*Court in and for Alameda County*, 133 Cal App 525, 530, 24 P2d 567, 569 (1933) (stating that the procedure to execute judgment more than five years after its entry "is a subsequent step in the action already commenced and not a separate proceeding"); *Gentile v. Ives*, 163 Conn 281, 282, 303 A2d 720, 721 (1972) (distinguishing between judgments enforced by execution and by separate suit); *Linton v. Linton*, 166 Ind App 428, 430, 339 NE2d 96, 97 (1975) (holding that proceedings for "remedying failures to honor judgments * * * are but a continuation of the original proceeding"); *Rentals Unlimited, Inc. v. Administrator, Etc.*, 286 Md 104, 113-14, 405 A2d 744, 750-51 (1979) (distinguishing between judgments enforced by "a new action on a judgment" and by "revival of the judgment").

[6] Or Laws 1953, ch 635, § 2. Subsection (6) was originally numbered ORS 107.100(5).

"(2)    The sheriff may not sell the residential real property or the mobile home of a natural person on execution without an order of the court authorizing the sale.

"(3)    The holder of a judgment desiring to have the residential real property or the mobile home of a natural person sold on execution may petition the court for an order authorizing the sheriff to sell. The petition must:

"(a)    Identify the judgment under which the property is to be sold and the amount due thereon;

"(b)    Indicate if the judgment arises out of an order or decree for child support as described in ORS 23.242;

"(c)    Identify the residential real property or mobile home to be sold;

"(d)    Allege whether the property is a homestead or not; and

"(e)    If the property is a homestead, allege facts showing that it may nevertheless be sold on execution.

"(4)    The petition shall be accompanied by an affidavit disclosing the basis of the allegations contained in the petition. If the sheriff is to serve the papers under subsection (6) of this section, the petition and affidavit shall be accompanied by a deposit sufficient to pay the fees of the sheriff for that service.

"(5)    Promptly upon the filing of a petition and affidavit as provided in subsections (3) and (4) of this section, the court shall schedule a hearing on the petition, allowing adequate time for notice to the judgment debtor at least 10 days prior to the hearing.

"(6)    At least 10 days prior to the hearing on the petition, the petitioner shall cause to be served upon the judgment debtor, in the manner provided by ORCP 7 for service of summons, a true copy of the petition and affidavit and of a notice of the time and place of the hearing * * *[.]

"(7)    Whether the judgment debtor appears at the hearing on the petition or not, the court shall try the issues without formal pleadings and shall inquire as to the facts alleged in the petition. The judgment creditor shall have the burden of proof on all issues.

"(8) Except as provided in ORS 23.164(9) and 23.240(7), the court may not authorize the sheriff to sell the property if the court finds:

"(a) That the property is the homestead of the judgment debtor;

"(b) That the judgment is subject to the homestead exemption; and

"(c) That the amount of the judgment was $3,000 or less at the time of entry of the judgment.

"(9) If the court authorizes the sheriff to sell the property, *the order of the court* shall state whether the homestead exemption applies to the property, and if so, the amount of the exemption.

"* * * * *

"(12) If the petitioner prevails at the hearing, the court shall award the petitioner the costs of service of the papers under subsection (6) of this section."

(Emphasis added.)

Nothing in the text of *former* ORS 23.445 suggests that the legislature intended that a proceeding for sale of a residence on execution of a judgment constitutes a separate action. To the contrary, *former* ORS 23.445(3)(a) contemplates that such a sale occurs "under" the original judgment, suggesting that the proceeding on a petition for an order for sale also occurs "under" the judgment and therefore is in effect a continuation of the original action. Also, although *former* ORS 23.445(5) to (7) provided that the judgment debtor is entitled to notice and a hearing before the court may authorize the sale of a residence, the statute did not provide for the entry of a new judgment. Instead, *former* ORS 23.445(9) made clear that the end result of the proceeding is an "order," not a judgment. Moreover, although *former* ORS 23.445(12) provided for an award of costs, but not attorney fees, to a prevailing petitioner, the procedures prescribed by the statute apply to all judgments, including judgments in actions in which there is no underlying right to recover attorney fees. Thus, the fact that *former* ORS 23.445(12) provided only for the recovery of costs comes as no surprise. Nothing in

that provision suggests that the legislature intended to override the applicability of statutes such as ORS 107.105(5) that otherwise would authorize the recovery of attorney fees by a prevailing party.

Because the order authorizing the sale of the residence was an appealable order "in a suit" for marital dissolution, we have discretion to make an award of attorney fees to the prevailing party on appeal from that order. Here, we exercise our discretion to make such an award. Respondent seeks an award of attorney fees in the amount of $5,679. Both the hourly rates charged and the amount of time expended by respondent's attorneys are reasonable in light of the time and labor required in the proceeding and the skills required to perform the legal services properly. In light of the objective reasonableness of the claims and defenses asserted by the parties, we conclude that respondent should be awarded the entire amount of attorney fees sought.

Petition for attorney fees allowed; respondent awarded $5,679.